Curtis R. Hussey
Hussey Law Firm, LLC
10 N. Section Street, No. 122
Fairhope, AL 36532-1896
Telephone: (251) 928-1423
Facsimile: (866) 317-2674
Email: chussey@ThompsonConsumerLaw.com
*Attorney for Plaintiff*

_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
_____

| | |
|---|---|
| Mercedes Heaps, | ) Case No. 2:18-cv-00589-BCW |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **DEFENDANT'S MOTION TO** |
| vs. | ) **SUBSTITUTE PARTY PLAINTIFF** |
| | ) **AND DISMISS** |
| Chad Rasmussen, LLC dba Alpina Legal | ) |
| and Cascade Collections, LLC, | ) |
| | ) Judge: Hon. Bruce S. Jenkins |
| Defendants. | ) |

## I.    Introduction.

Defendants believe they can use the mechanisms of state law to absolve themselves of liability for violations of federal law. They are mistaken. The Court should follow the well-reasoned opinion in *Arellano v. Clark Cty. Collection Serv., LLC*, 875 F.3d 1213, 1216 (9th Cir. 2017), and deny Defendant's motion to dismiss. The FDCPA exists to protect consumers and deter collectors' bad behavior. It accomplishes this goal by encouraging consumers to bring enforcement actions against noncompliant collectors. Allowing collectors to execute on, purchase, and dismiss consumers' FDCPA claims

1

undermines the purpose of the statute, as well as Congress's chosen enforcement method. As the Ninth Circuit explained in *Arellano*, the FDCPA therefore preempts state laws insofar as they allow collectors to execute on a consumer's FDPCA claims.

## II.     Factual Background

On June 22, 2017, Defendant Cascade Collections, LLC obtained a default judgment against Plaintiff in Utah state court.  Doc. 17 at 12; Doc. 16 at ¶ 26.  On July 27, 2017, Defendants sent Plaintiff a collection letter, which violated several provisions of the FDCPA.  Doc. 16-1.  Thereafter, on July 25, 2018, Plaintiff filed her original Complaint alleging that Defendants had violated several provisions of the Fair Debt Collection Practices Act ("FDCPA") in connection with its attempts to collect from Plaintiff.  Doc. 1. The very next day, on July 26, 2018, Defendants filed an application for writ of execution in an effort to seize Plaintiff's cause of action against Defendants.  Doc. 16-2.  Thereafter, on December 7, 2018, a Deputy Constable of the Salt Lake County Constable's Office auctioned off Plaintiff's choses in action against Defendants.  Doc. 17 at 26.  Cascade itself purchased Plaintiff's choses in action for the paltry sum of $300.00.  On December 17, 2018, Defendants filed a motion to dismiss claiming that Cascade was the new party in interest.  Doc. 17.  That same day, Plaintiff filed her first amended complaint which included additional claims for Defendant's improper attempts to circumvent the FDCPA and prevent enforcement of the statute against both Defendants.  Doc. 16.

### III. Defendant's motion should be denied because the FDCPA preempts Utah law insofar as it allows defendants in FDCPA actions to purchase and dismiss consumers' FDCPA claims.

The scope of a statute's preemptive effect is guided by the rule that Congress's purpose is the ultimate touchstone in every pre-emption case. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Therefore where, "under the circumstances of [a] particular case, [a state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," that state law must give way. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 581 (1941); *see also Boggs v. Boggs*, 520 U.S. 833, 844, 117 S. Ct. 1754, 1762, 138 L. Ed. 2d 45 (1997). For example, "[a] state law . . . is pre-empted if it interferes with the methods by which [a] federal statute was designed to reach [its] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S. Ct. 805, 813, 93 L. Ed. 2d 883 (1987).

The FDCPA is a federal statute enacted "to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The Act thus seeks "to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007). Though it also empowers the Consumer Financial Protection Bureau and the Federal Trade Commission to enforce its provisions, Congress particularly sought to effect the FDCPA's "broad remedial" goals through "private enforcement"—that is, by "permitting aggrieved individuals to bring suit as private attorneys general." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060–61 (9th Cir. 2011). In keeping with its desire "to promote consistent

State action to protect consumers against debt collection abuses," 15 U.S.C. § 1692, Congress made clear that state laws that are "inconsistent with any provision" of the statute are preempted "to the extent of the inconsistency," *id.* § 1692n.

There is a direct conflict between (1) Congress's plan for preventing debt collection abuses through the FDCPA's scheme of private enforcement and (2) Defendants' scheme to stymie this case by purchasing Plaintiff's claim for purposes of dismissing it. To the extent that state law allows such a tactic, state law must give way to "the supreme Law of the Land." U.S. Const., art. VI, cl. 2. While limited law exists on this issue, the highest court to weigh in on the issue confirms this analysis.

In *Arellano v. Clark Cty. Collection Serv., LLC*, the Ninth Circuit faced the same situation this Court now faces. 875 F.3d 1213, 1216 (9th Cir. 2017). In *Arellano*, a consumer filed a lawsuit against a debt collector for violating the FDCPA. *Id.* Instead of meeting the merits of the consumer's claim, the debt collector used a bold gambit. *Id.* It quickly obtained a default judgment again the consumer, executed on the consumer's FDCPA claim, purchased it at a sheriff's sale (for a paltry $250), and immediately moved to dismiss the case. *Id.* At the trial level, the collector's tactic worked; the district court dismissed the case. *Id.* However, on appeal, the Ninth Circuit reversed and found that state law—insofar as it allowed a collector to execute against and dismiss an FDCPA claim—was preempted:

> Where the Act "itself does not speak directly to the issue, the Court must be guided by the goals and policies of the Act in determining whether it in fact pre-empts an action based on the law of an affected State." *Int'l Paper Co.*, 479 U.S. at 493, 107 S.Ct. 805. Just as in *International Paper Co.*, the federal law in question directly regulates the substantive law at issue (debt collection

4

practices) and specifically empowers debtors to bring suit against debt collectors. 15 U.S.C. § 1692i; *see Int'l Paper Co.*, 479 U.S. at 495, 107 S.Ct. 805 (holding that Vermont nuisance law was preempted to the extent that it conflicted with water pollution standards set forth in the Clean Water Act). And while the Act itself need not "speak directly to the issue," *Int'l Paper Co.*, 479 U.S. at 493, 107 S.Ct. 805, the FDCPA does expressly preempt state laws "to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency," 15 U.S.C. § 1692n.

In addition to evading liability and preventing Arellano from pursuing her potential federal claims, the collection agency has literally used the execution mechanism to collect debt from Arellano, and argues that she "has received the benefit of [the $250] reduction in her judgment." But a debt collector cannot be allowed to use state law strategically to execute on a debtor's FDCPA claims against it under the guise of legitimate debt collection. Though the FDCPA does preserve debt collectors' rights to collect what they are owed, the Act does not "authorize the bringing of legal actions by debt collectors." *See* 15 U.S.C. § 1692i(b). **Debt collectors cannot evade the restrictions of the Act by forcing a debtor's claims to be auctioned, acquiring the claims, and dismissing them. To allow otherwise would thwart enforcement of the FDCPA and undermine its purpose.** *See* 15 U.S.C. §§ 1692k, l.

\* \* \*

Resolving this case does not require any additional or supplemental rule beyond the text of the Act. **A state remedy of execution cannot be used for the purpose of avoiding the impact of federal law.** Therefore, we reverse the district court, and remand for proceedings consistent with this opinion, holding that federal law preempts a private party's use of state execution procedures to acquire and destroy a debtor's FDCPA claims against it. We need not, and do not, reach any other issue urged by the parties.

*Arellano,* 875 F.3d at 1218 (emphasis added).

The *Arellano* decision makes perfect sense, and because it proceeds from well-established Supreme Court Precedent, its reasoning is in no way particular to the Ninth Circuit or Nevada. Congress's concern for vulnerable consumers and its chosen method of protecting them are both imperiled by the purchase-and-dismiss tactic. Congress

intended for the FDCPA's "broad remedial" goals to be achieved through the work of "aggrieved individuals . . . bring[ing] suit as private attorneys general." *Gonzales*, 660 F.3d at 1060–61. Allowing the purchase-and-dismiss tactic to succeed would render that system of private enforcement impossible, as any debt collector facing liability could immediately sue on the debt, get a judgment, and then execute on the claim. If this practice were allowed, Collectors would not be deterred from using "abusive debt collection practices." 15 U.S.C. § 1692. Instead, debt collectors would be safe in the knowledge that they could always extinguish FDCPA suits against themselves for pennies on the dollar. *See* Doc. 17 at 26. Such futility would undoubtedly discourage debtors from bringing FDCPA claims.

While *Arellano* is not binding authority in this circuit, the Supreme Court has recognized "the FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement" and expressed concerns—when addressing other matters related to the Act—about "chill[ing] private suits under the statutory right of action . . . ." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 603, 130 S. Ct. 1605, 1624, 176 L. Ed. 2d 519 (2010). Given *Arellano*'s factual parallels and its persuasively reasoned application of *International Paper*, the Court should adopt its reasoning and reach the same result.

> **A.   FDCPA case law from around the country confirms that the *Arellano* court's reasoning is on firm footing.**

Debt collectors have repeatedly tried to offset consumers' FDCPA damages against debts—both reduced to judgment and not. These attempts have been repeatedly denied because they undermine the statute's purposes and enforcement mechanisms.

For example, in *Isa v. Law Office of Timothy Baxter & Associates*, a collector attempted to satisfy an FDPCA judgment by paying it directly to the consumer's creditor. No. 13-CV-11284, 2013 WL 5692850, at *3 (E.D. Mich. Oct. 21, 2013). The court would not allow this to happen because it undermined the statute's purpose and enforcement mechanisms:

> Defendant does not deny violating the FDCPA . . . . Defendant entered a consent judgment for statutory damages and attorney's fees. Defendant then paid those fees to the Plaintiff's creditor in satisfaction of the underlying debt. Defendant incorrectly claims this furthers the purpose of the FDCPA. **Congress did not intend for collectors to engage in violations, enter judgments, and use state law on judgment execution to force payment to creditors. Allowing Defendant, the wrongdoer under the FDCPA, to pay the judgment directly to Plaintiff's creditor undermines the very purpose of the FDCPA**. It in effect negates the FDCPA's purpose to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It also undermines Congress' intent that consumers have access to competent counsel. **If the Court were to permit Defendant to discharge its payment obligations in this manner, attorneys will decline to represent consumers if their fees will ultimately end up in the hands of the creditor**. Accordingly, the FDCPA's stated purpose does not contemplate using a judgment to pay the underlying debt associated with the abusive debt collection practice as a remedy for a violation under the Act.

*Id.* (emphasis added).

Other courts to have confronted this issue have similarly held that offset is not permitted because it is antithetical to the FDCPA. *See, e.g.*, *Reed v. Glob. Acceptance Credit Co.*, No. C-08-01826-RMW, 2008 WL 3330165, at *7 (N.D. Cal. Aug. 12, 2008) ("Considering that setoff is an equitable remedy [and] appears contrary to the established policies of FDCPA . . . . defendants are unable to setoff the underlying debt against plaintiff's FDCPA claims."). One court found that "an offset of attorney's fees would chill

FDCPA claims, reducing the incentives for plaintiffs to bring FDCPA claims and for attorneys to represent them," explaining:

> Offset should not prevail over attorney's fees if this result would deprive future plaintiffs of legal representation . . . . Offset is also "patently unfair" where it would effectively force attorneys to satisfy the debts of their clients. *Wujcik v. Wujcik*, 21 Cal. App. 4th 1790, 1794-95 (1994) (favoring offset over attorney's fees because prioritizing a child support judgment over the liens of the medical providers and attorney would not hold appellant responsible for paying child support arrearages, but rather, would hold the medical providers and the attorney responsible for paying appellant's child support obligation out of their pockets). Likewise, **if the Court here were to prioritize offset over attorney's fees, the Court would effectively mandate that the attorney pay Plaintiff's debt. This outcome would surely chill FDCPA claimants—no prudent attorney would bring FDCPA claims with the knowledge that they would end up satisfying their clients' debts out of their own pockets**. Because giving offset priority over attorney's fees contravenes legislative intent by reducing the incentives for plaintiffs to bring FDCPA claims and for attorneys to represent them, the Court declines to offset the attorney's fee award . . . .

*Brown v. Mandarich Law Grp., LLP*, No. 13-CV-04703-JSC, 2014 WL 2860631, at *2-4 (N.D. Cal. June 23, 2014) (emphasis added).

### B. Case law interpreting consumer protection statutes with similar enforcement mechanisms to the FDPCA further support the *Arellano* court's reasoning.

Like the FDCPA, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640 *et seq.*, is a federal fee-shifting statute designed to protect consumers under the umbrella of the Consumer Credit Protection Act, and it is appropriate to interpret the two *in pari materia*. *See People v. Rahilly*, 247 Mich. App. 108, 112, 635 N.W.2d 227, 230 (2001) ("Two statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together.").

8

One of the first Courts of Appeal to consider the issue under the TILA held that offset is not appropriate:

> We hold that in a truth-in-lending action an award of attorney's fees is not subject to setoff against the debtor's outstanding debt to the creditor. No discretion is available to the trial court in this matter and the attorney is entitled to the fee that is awarded him regardless of any controversy regarding the underlying debt. . . .
>
> An important enforcement mechanism of the Act is the provision in 15 U.S.C.A. s 1640 making available double civil damages with a maximum ceiling of $1,000.00. As a practical matter, the award of attorney's fees is a critical and integral part of this section. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attorney. Allowance of attorney's fees in a successful action makes legal representation available in a manner analogous to the contingent fee system. Were the attorney's fee award subject to setoff, the expectation of fees from a successful action might well be limited to the resources of the debtor in any case where the outstanding debt, being in default and subject to counterclaim, exceeded the recovery. To allow a setoff would in effect relieve the creditors in violation of the Act of the attorney's fee expense in the case of an insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objectives.

*Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1365-66 (5th Cir. 1979).

Other courts followed suit:

> Congress sought to ensure compliance with the Act by providing an incentive for self-enforcement: actual monetary recovery by the individual borrower-litigant and recovery of his attorney's fees. . . . By allowing lenders to subtract Truth-in-Lending awards from amounts owed them by bankrupt borrowers, the district court would eliminate any incentive for bankruptcy trustees to pursue Truth-in-Lending claims. . . . The denial [of offset] clearly effectuated the deterrent and self-enforcement purposes of the Act. Moreover, imposition of the section 1640 award without the right to setoff merely penalized [the defendant] to the extent intended by Congress; it did not impose draconian sanctions . . . .

*Riggs v. Gov't Emp. Fin. Corp.*, 623 F.2d 68, 74-75 (9th Cir. 1980); *see also Griggs v. Provident Consumer Disc. Co.*, 680 F.2d 927, 932-33 (3d Cir. 1982), vacated on jurisdictional grounds, 699 F.2d 642 (3d Cir. 1983) ("If a creditor were allowed a setoff, the deterrent effect of the civil penalty liability would be reduced. A setoff would remove incentives for an obligor to sue under the Act. Moreover, a setoff would be anomalous since the cause of action inures to the plaintiff as a private attorney general."); *Graham v. Bank of Damascus, Inc.*, 528 F. Supp. 596, 598 (W.D. Va. 1981) ("While this court agrees that the attorney's fees are awarded to the plaintiff, it cannot agree that the fee should then be subject to setoff. To allow such a setoff would effectively make Truth in Lending claims unavailable to insolvent debtors. This court agrees with the court in Plant and rejects such an outcome.") (citing *Plant*, 598 F.2d at 1366); *Schmidt v. Citibank (S. Dakota) N.A. (CBSD)*, 677 F. Supp. 687, 691 (D. Conn. 1987) ("Defendant's argument herein, much like the argument in Plant that the debtor's outstanding debt to the creditor should be offset by the amount paid to plaintiff's attorney for prosecuting his TILA claim, ignores the intent of the statute."); *cf. Duncan v. U.S. Dep't of Army*, 887 F.2d 1078 (4th Cir. 1989) ("private enforcement . . . will be undermined if the very offender of the statute is let off the hook from paying attorney's fees which in effect provide the mechanism by which the enforcement is brought to bear.").

The Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72, is Florida's state counterpart to the FDCPA and is interpreted similarly. *See* Fla. Stat. § 559.77(5); *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010). Interpreting the FCCPA, the Eleventh Circuit held that "the stated purpose of the FCCPA would be

undermined if set off was allowed," explaining the holding of the court below, which it affirmed, as follows:

> [I]t would be "inequitable to permit" Chase to set off its FCCPA obligation because it would allow Chase "to take illegal action without consequence." In the bankruptcy court's view, if a creditor can simply set off an award under the FCCPA against the outstanding debt the creditor is attempting to collect, there would be little to no incentive to comply with the FCCPA. The bankruptcy court was also concerned that allowing a creditor to set off its FCCPA obligation would "reward" the creditor's illegal actions by giving it "a shortcut in the collection process." Further, the bankruptcy court noted that the Florida legislature included a mandatory attorney's fee provision in the FCCPA. The bankruptcy court determined that the Florida legislature included the mandatory attorney's fee provision in order to encourage private attorneys to bring FCCPA claims. In the bankruptcy court's view, if a creditor is allowed to set off its FCCPA obligation against the outstanding debt, private attorneys would be discouraged from bringing FCCPA claims and bad collection practices—the very practices the statute is meant to curb—would never be aired in a court of law.

*Brook v. Chase Bank USA, N.A.*, 566 F. App'x 787, 790 (11th Cir. 2014).

Even the Supreme Court, considering a similar issue, has found offset inappropriate where a creditor is liable for a statutory penalty. *See McCollum v. Hamilton Nat. Bank of Chattanooga*, 303 U.S. 245, 248, 58 S. Ct. 568, 570, 82 L. Ed. 819 (1938) ("To allow respondent to satisfy the judgment for penalty by mere deduction from its claim against the bankrupt's estate is to detract from the punishment definitely prescribed. The sentence specifically required by the law may not be cut down by implication, set-off or construction; for that would narrow the statute and tend to defeat its purpose.").

### C. Defendants use the same underhanded tactic condemned in *Arellano*, thus this Court should likewise find that they preempted from doing so by the FDCPA.

Cascade obtained a judgment against Plaintiff, executed on her FDCPA claims, purchased them at a Constable's sale for a measly $300 (*see* Doc. 17 at 26), and now based on the sale, Defendants seeks to dismiss Plaintiff's case. Doc 17. If allowed, Defendants' scheme would allow them to evade the resolution of Plaintiff's claims on the merits, and avoid all potential liability under the FDCPA, thereby "thwart[ing] enforcement of the FDCPA and undermin[ing] its purpose." *Arellano*, 875 F.3d at 1218. Insofar as Utah law allows Defendants to seize Plaintiff's FDCPA claims and dismiss them, it stands as an obstacle to Congress's aim in enacting the FDPCA, and Congress's intent that consumers enforce the statute, therefore it is preempted by the FDPCA. *See Hines*, 312 U.S. at 67; *Int'l Paper*, 479 U.S. at 494.

Defendant's motion does not address *Arellano*, and instead it relies upon *RMA Ventures California v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1071 (10th Cir. 2009). Because it is easily distinguishable, Defendant's reliance on *RMA Ventures* is misplaced.

*RMA Ventures* is a diversity case for breach of contract and misrepresentation, litigated by two business. *Id.* After the plaintiff lost at the trial level, it appealed. While the appeal was pending, the defendant obtained a fee award. *Id.* The plaintiff did not appeal the award of attorney's fees, or post a supersedeas bond pending the outcome of the appeal. *Id.* The defendant used its fee award and judgment to execute on the plaintiff's appeal rights. *Id.* The defendant then moved to dismiss the plaintiff's appeal, which the Court of Appeals allowed. *Id.*

*RMA Ventures* could not be more different. It did not involve a consumer claim under the FDCPA, or any other federal law, and preemption was not an issue in the case. Thus, the primary features animating the *Arellano* decision were simply not present in *RMA Ventures*. Therefore, it is distinguishable.

## V. Conclusion.

Defendant's motion should be denied in its entirety. Insofar as Utah law allows collectors to seize, purchase, and dismiss consumers' FDCPA claims, it frustrates the FDCPA's purpose and Congress's chosen enforcement mechanisms. Thus, it is preempted by the FDCPA.

Dated: January 21, 2019.　　　　　　　Respectfully submitted,

s/Curtis R. Hussey
Curtis R. Hussey
USB No. 5488
Hussey Law Firm, LLC
10 N. Section Street, No. 122
Fairhope, AL 36532-1896
Telephone: (251) 928-1423
Facsimile: (866) 317-2674
Email: chussey@ThompsonConsumerLaw.com

*Co-counsel with:*
*Thompson Consumer Law Group, PLLC*

**Correspondence address:**

Thompson Consumer Law Group, PLLC
5235 E. Southern Ave D106-618
Mesa, AZ 85206
TCLG@thompsonconsumerlaw.com

Attorneys for Mercedes Heaps

13

## **CERTIFICATE OF SERVICE**

I certify that on January 21, 2019, I filed the foregoing document with the Court using CM/ECF, which will send notification of such filing to all counsel of record.

s/Curtis R. Hussey
Curtis R. Hussey
